WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eliseo Mendez-Cruz,<br><br>    Petitioner,<br><br>v.<br><br>Loretta E Lynch, et al.,<br><br>    Respondents. | No. CV-16-04416-PHX-GMS (DMF)<br><br>**ORDER** |

Before the Court is Petitioner's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 10) seeking an order enjoining his further detention without being provided with a fair bond hearing. The Court heard oral argument on the motion on Friday, February 17, 2017. After consideration of the parties' briefs and argument, the Court grants the Motion. The underlying Petition for Writ of Habeas Corpus will remain pending before the Magistrate Judge for further proceedings and the parties will be required to file a joint status report following Petitioner's bond hearing.

## I.  Background

Petitioner is a native and citizen of Guatemala. He entered the United States on July 24, 2015, and was removed in August 2015. Petitioner re-entered the United States again on December 26, 2015, was removed for the second time in January 2016, and most recently re-entered the United States in March 2016. He was prosecuted for illegal re-entry after deportation and his prior removal order was reinstated. After Petitioner served his 30-day sentence stemming from his illegal re-entry conviction, he expressed a

fear of returning to Guatemala, which resulted in his referral for a reasonable fear interview and a suspension of the execution of his removal order.

Petitioner made a showing of reasonable fear if returned to Guatemala and was referred to immigration proceedings for Withholding of Removal and relief under the Convention Against Torture. Petitioner's hearing on the merits of these claims is scheduled for May 2017. While Petitioner's immigration proceedings were ongoing, he sought a custody redetermination hearing, which was denied by the Immigration Judge for lack of jurisdiction, and is currently on appeal before the BIA. Petitioner has been detained without a bond hearing since March 27, 2016—or nearly 11 months.

In his underlying Petition for Writ of Habeas Corpus, Petitioner argues that his lengthy detention without bond is unlawful in this Circuit. He seeks a declaration that his current detention without an appropriate bond hearing is unlawful and an order directing Respondents to grant him a bond hearing before an IJ, with the burden on the government to show that he is either a flight risk or a danger to society.

## II. Motion for Preliminary Injunction

### A. Standard

"'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948, pp. 129–130 (2d ed. 1995)). To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

/ / /

/ / /

- 2 -

The Ninth Circuit's "serious questions" version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*. *Alliance for the Wild Rockies v. Cottrell* 632 F. 3d 1127, 1134 (9th Cir. 2011). Under that test, a preliminary injunction is appropriate when a plaintiff demonstrates that "'serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'" *Id.* at 1134-35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)). The movant must also satisfy the other two *Winter* factors—likelihood of irreparable harm and that an injunction is in the public interest. *Id.* With respect to the irreparable harm prong, *Winter* specifically rejected the Ninth Circuit's "possibility of irreparable injury" standard. *Stormans, Inc. v. Selecky* 586 F.3d 1109, 1127 (9th Cir. 2009). Under *Winter*, a party seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. The Court explained that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

Additionally, because Petitioner seeks a mandatory injunction—an injunction altering the status quo—a "heightened standard" applies. *Katie A. ex rel. Ludin v. Los Angeles County*, 481 F.3d 1150, 1156 (9th Cir. 2007). A mandatory injunction is "'particularly disfavored'" and a "district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979).

    **B.**    **Likelihood of Success on the Merits**

        **1.**    **Exhaustion**

Respondents' initial argument against relief is that Petitioner has not fully exhausted his administrative remedies, and the Court should decline to entertain his petition at this time. But exhaustion is a prudential rather than jurisdictional requirement.

*Singh v. Holder,* 638 F.3d 1196, 1203 n. 3 (9th Cir. 2011). Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; or (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir.2007). Even if these factors weigh in favor of prudential exhaustion, waiver of exhaustion may be appropriate "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir.2004) (citation and quotation marks omitted).  Because there is no definitive timeframe within which the BIA must rule, and the Court finds that Petitioner is entitled to a bond hearing, it will decline to require prudential exhaustion.

### 2. Detention Under 8 U.S.C. § § 1226(a) or 1231(a)

Petitioner asserts an entitlement to a bond hearing whether his detention arises under 8 U.S.C. § 1226(a) or 8 U.S.C. § 1231(a). While § 1226(c) controls the detention of certain criminal aliens during the pendency of their removal hearings, § 1231(a) controls the detention of removable aliens "during" and "beyond" "the [statutory] removal period."

During withholding proceedings, the IJ may determine only if Petitioner should be granted withholding or deferral of removal. 8 C.F.R. § 1208.2(c)(3)(i). "During such proceedings, all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." *Id*.

Nothing about a withholding-only proceeding allows the Petitioner to attack or relitigate the finality of his underlying removal order.  His detention, thus, does not arise pursuant to § 1226(a).   "If Petitioner had a final order of removal (and was subject to detention under Section 1231) prior to expressing a fear of torture, and he will have a

final order of removal (and will be subject to detention under Section 1231) after his withholding proceedings are completed (no matter what the outcome is), I cannot see how his detention status should change as a matter of law during his withholding proceedings. Such a transitory appearance of new rights vis-a-vis an alien's ability to obtain bond makes no legal sense." *Reyes v. Lynch*, No. 15-CV-00442-MEH, 2015 WL 5081597, at *4 (D. Colo. Aug. 28, 2015). The Court therefore finds that Petitioner's detention arises under 8 U.S.C. § 1231(a).

*Diouf v. Napolitano*, 634 F.3d 1081, 1085 (9th Cir. 2011) (Diouf II), expressly applies "to aliens who have exhausted all direct and collateral review of their removal orders but who, for one reason or another, have not yet been removed from the United States." As Respondents argue, nothing about Petitioner's withholding proceedings affects the finality of his removal order. Thus, Petitioner's detention is governed by *Diouf II*. Nor does *Diouf II* conflict with the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 671 (2001), because each decision provides a different remedy and the decisions work in harmony. *See Olivera-Julio v. Asher*, No. C14-1312-RSM, 2014 WL 6387351, at *2 (W.D. Wash. Nov. 14, 2014) ("After this six-month period, an alien is entitled to a bond hearing if removal is not imminent, *Diouf v. Napolitano*, 634 F.3d 1081, 1091–92, 1092 n. 13 (9th Cir. 2011), or conditional release if the alien can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future,' *Zadvydas*, 533 U.S. at 701.").

Because entitlement to a bond hearing after 6 months is mandated by Ninth Circuit precedent, the Court agrees with Petitioner that granting the request for injunctive relief is maintaining the status quo as directed by the court of appeals.

### C. Likelihood of Irreparable Injury

When civil detention of an alien "crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." *Diouf*, 634 F.3d at 1091–92. Because Petitioner has now

been detained for nearly one year without a determination by an IJ that he is a flight risk or a danger to the community, he has established a likelihood of irreparable injury.

### D. Balance of Hardships and the Public Interest

Petitioner argues that the balance of hardship tips in his favor because his continued detention without being provided a fair bond hearing is unlawful. Because granting a preliminary injunction will not automatically result in Petitioner's release, and there is no burden to Respondents in providing a fair bond hearing, the Court finds that the balance of hardships and the public interest favor the granting of a preliminary injunction. Because the Court directs only that an appropriate bond hearing be held, Plaintiff is not required to post bond related to this injunction.

### III. Conclusion

The Court finds that Petitioner is likely to succeed on the merits concerning his right to a bond hearing, that he is likely to suffer irreparable harm in the absence of a preliminary injunction, that the balance of hardships tips in his favor, and that granting him a bond hearing is in the public interest. Accordingly, Petitioner's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 10) is granted.

**IT IS ORDERED** withdrawing the reference to the Magistrate Judge and **granting** Petitioner's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 10). Within 20 days, Respondents must provide Petitioner with a hearing before an Immigration Judge with the power to grant him release on bond if the Immigration Judge determines that he qualifies for release under applicable law.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1  **IT IS FURTHER ORDERED** that within 5 days of Petitioner's forthcoming bond hearing, the parties must provide a joint status report to the Court indicating what remaining proceedings are necessary.

Dated this 17th day of February, 2017.

_____
Honorable G. Murray Snow
United States District Judge